UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

INGRID ISIS ALCIVAR LORENZO,

                Petitioner,

v.

KEVIN RAYCRAFT et al.,

                Respondents.

_____/

Case No. 1:26-cv-77

Honorable Jane M. Beckering

## OPINION

Ingrid Isis Alcivar Lorenzo initiated this action on January 9, 2026, by filing a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on behalf of her mother, Francisca Lorenzo, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan. (Pet., ECF No. 1.) For the following reasons, the Court will conditionally grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.    Procedural History

In her § 2241 petition, Ms. Alcivar Lorenzo challenges the lawfulness of Ms. Lorenzo's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Respondents to release Petitioner or ordering Respondents to conduct a bond hearing to satisfy the requirements of due process. (Pet., ECF No. 1, PageID.5.)

In an Order entered on January 15, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner

should not be granted. (Order, ECF No. 3.) Respondents filed their response on January 21, 2026. (ECF No. 4.)

## II.    Next Friend Status

As a preliminary matter, the Court must determine whether Ms. Alcivar Lorenzo may proceed as "next friend" of Ms. Lorenzo. A petition for a writ of habeas corpus must be in writing and "signed and verified by the person for whose relief it is intended or by someone acting in [her] behalf," known as a "next friend." 28 U.S.C. § 2242; *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1989). "A 'next friend' does not [herself] become a party to the habeas corpus action in which [she] participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest." *Whitmore*, 495 U.S. at 163 (citations omitted). Next friend status, therefore, is an exception to 28 U.S.C. § 1654, which states: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654.

To act on a detainee's behalf, a putative next friend must demonstrate that the detainee is unable to prosecute the case on her own behalf due to "inaccessibility, mental incompetence, or other disability" and that the next friend is "truly dedicated to the best interests of the person on whose behalf he [or she] seeks to litigate." *Whitmore*, 495 U.S. at 163–64 (citations omitted); *see West v. Bell*, 242 F.3d 338, 341 (6th Cir. 2001); *Franklin v. Francis*, 144 F.3d 429, 432 (6th Cir. 1998). The *Whitmore* Court noted that the next friend might demonstrate her dedication to the "best interests" of the real party in interest by showing "some significant relationship" with that party. *Whitmore*, 495 U.S. at 164. The putative next friend must clearly establish "the propriety of his [or her] status" in order to "justify the jurisdiction of the court." *Id.* (citations omitted). Standing to proceed as next friend on behalf of a prisoner "is by no means granted automatically to whomever seeks to pursue an action on behalf of another." *Id.* at 163.

2

"[A] next-friend may not file a petition for a writ of habeas corpus on behalf of a detainee if the detainee [herself] could file the petition." *Wilson v. Lane*, 870 F.2d 1250, 1253 (7th Cir. 1989) (citing *Weber v. Garza*, 570 F.2d 511, 513 (5th Cir. 1978)). The putative next friend "must clearly and specifically set forth facts sufficient to satisfy the[] Art[icle] III standing requirements" because "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore*, 495 U.S. at 155–56 (citation omitted). Most significantly, "when the application for habeas corpus filed by a would be 'next friend' does not set forth an adequate reason or explanation of the necessity for resort to the 'next friend' device, the court is without jurisdiction to consider the petition." *Weber*, 570 F.2d at 514; *see Whitmore*, 495 U.S. at 163.

In this action, the Court concludes that the petition and attached documents adequately demonstrate that the justice system is inaccessible to Ms. Lorenzo, who is detained in an ICE detention facility with limited English proficiency. (*See* ECF No. 1-2, PageID.15.) Moreover, Ms. Alcivar Lorenzo, the daughter of Ms. Lorenzo, has demonstrated both a significant relationship with Ms. Lorenzo, and that she is truly dedicated to acting in Ms. Lorenzo' best interests. Ms. Alcivar Lorenzo has attached to her petition documents indicating Ms. Alcivar Lorenzo's unyielding pursuit of relief on behalf of Ms. Lorenzo through the various avenues available. Accordingly, the Court will permit Ms. Alcivar Lorenzo to proceed as next friend to Ms. Lorenzo.

## III.   Factual Background

Ms. Lorenzo is a native and citizen of Mexico. (Employment Authorization, ECF No. 1-10, PageID.45; Mitchell Decl. ¶ 4, ECF No. 4-1, PageID.187.) She entered the United States at an unknown date, time, and place without being "admitted or paroled." (Mitchell Decl. ¶ 4, ECF No. 4-1, PageID.187.)

3

Since her entry into the United States, United States Border Patrol encountered and removed Ms. Lorenzo on several occasions pursuant to an order of expedited removal. (*Id.*, ¶¶ 5–8, PageID.187–88.) Ms. Lorenzo returned to the United States each time.[1] On August 20, 2014, United States Border Patrol encountered Ms. Lorenzo near Calexico, California, and issued her a Form I-871 Notice of Intent/Decision to Reinstate Prior Order. (*Id.*, ¶ 9, PageID.188.) When ICE agents again encountered Petitioner in Seattle, Washington on November 10, 2014, Petitioner was found to have a reasonable fear of returning to Mexico. (*Id.*, ¶¶ 10, 12, PageID.189). Therefore, while an immigration judge ordered Petitioner removed, the immigration judge withheld removal to Mexico. (*Id.*, ¶ 14; Order of Withholding, ECF No. 1-17, PageID.64.) On January 27, 2015, Petitioner was released from detention on an order of supervision. (Notice and Order of Release, ECF No. 1-12, PageID.53–55.) She has remained in the United States since that time.

Prior to her detention, Ms. Lorenzo lived in Michigan with her three children, two of whom are minor United States citizens. (Birth Certificate I, ECF No. 1-8, PageID.40–41; Birth Certificate II, ECF No. 1-9, PageID.42–43.) Ms. Lorenzo holds valid employment authorization (Employment Authorization, ECF No. 1-10, PageID.45), owns her own home (Home Ownership Records, ECF No. 1-25, PageID.116–144), and has paid taxes while working within the United States (Tax Records, ECF No. 1-24, PageID.84–115).

On December 10, 2025, the Van Buren County Sheriff's Department arrested Petitioner on charges of assault and battery. (*Id.*, ¶ 16, PageID.190.) The case remains pending. (*Id.*) On December 11, 2025, ICE agents encountered Petitioner at the Van Buren County Jail, detained her,

---

[1] Respondents note that Petitioner was convicted of violation of 8 U.S.C. 1325, improper entry by alien. (*Id.*, ¶ 15.) However, Respondents do not contend Petitioner has been convicted of any crime listed under 8 U.S.C. § 1227(a)(2)(A) so as to implicate 8 U.S.C. § 1226(c) regarding the detention of "criminal aliens."

and transferred her to North Lake Processing Center. (*Id.*, ¶ 17.) The Department of Homeland Security has placed Petitioner in expedited removal proceedings based upon Petitioner's 2014 removal order. (Resp., ECF No. 4, PageID.180.)

## IV.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## V.    Exhaustion

Respondents argue that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted her administrative remedies. Specifically, Respondents argue that Petitioner has not appealed her order of expedited removal.

The Court declines to enforce the doctrine of prudential exhaustion against Petitioner, and even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate, for the reasons set forth in the Court's exhaustion analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *2–3 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *2–4 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *2–4 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *2–3 (W.D. Mich. Dec. 12, 2025).

Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## VI.    Merits Discussion

Petitioner contends that Respondents have violated the INA by concluding that Ms. Lorenzo is detained pursuant to the mandatory detention provisions. Respondents, however, contend that Ms. Lorenzo is subject to expedited removal under Ms. Lorenzo's prior order of expedited removal, which they claim was last reinstated in 2014. (Resp., ECF No. 4, PageID.180.) The Court has not been provided with that order.

According to the INA,

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). However, 8 C.F.R. § 241.8 provides an "[e]xception for withholding of removal:"

> If an alien whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture pursuant to § 208.31 of this chapter.

*Id.* Immigration authorities did not continue to detain Ms. Lorenzo; instead, Ms. Lorenzo was released on an order of supervision. Therefore, this case is not about the government's authority to detain Ms. Lorenzo pursuant to a final order of expedited removal in the first place; this case concerns ICE's authority to *re-detain* her following release on an order of supervision. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025).

Ordinarily, when an individual is issued a final order of removal as Ms. Lorenzo has here, that person must be removed from the country within 90 days. 8 U.S.C. § 1231(a)(1)(A). Except for situations where the person is "detained or confined" in a case other than the "immigration

6

process," or where a court orders a stay of removal, the 90-day removal period begins when the removal order becomes administratively final. *Id.* § 1231(a)(1)(B). Under § 1231(a)(6), the government is permitted to continue to detain individuals who are deemed "inadmissible" beyond the removal period, or it may release them under specified terms of supervision. *Id.* § 1231(a)(6). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001); *see* 28 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Consistent with § 1231(a)(6), Ms. Lorenzo was released from detention with an order of supervision, requiring that Ms. Lorenzo attend a yearly check-in with ICE. There is no evidence before the Court that Ms. Lorenzo failed to comply with that requirement.

The government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations—specifically, §§ 241.4 and 241.13—also govern the revocation of such noncitizens' release. The agency must comply with the applicable regulatory and statutory requirements. *See, e.g., United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), *superseded in part by statute on other grounds as recognized in Dept. of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 135 (2020) ("[A]s long as the regulations remain operative, the Attorney General denies himself the right to sidestep" those regulations.). As the Sixth Circuit Court of Appeals has explained:

> "The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Service v. Dulles*, 354 U.S. 363, 372 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). An agency's failure to follow its own regulations 'tends to cause unjust

discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, 'even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.' *Vitarelli*, 359 U.S. at 547 (Frankfurter, J., concurring); *see also* Note, *Violations by Agencies of Their Own Regulations*, 87 Harv. L.Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts)."

*Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir.1998)).

8 C.F.R. § 241.4 generally governs the continued detention of noncitizens under a final order of removal. Section 241.4(l)(2) provides:

The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

   (i) The purposes of release have been served;

   (ii) The alien violates any condition of release;

   (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

   (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4.

Section 241.13 governs the detention of noncitizens under a final order of removal where "there is no significant likelihood of removal in the reasonably foreseeable future." § 241.13(b). If the noncitizen was released pursuant to § 241.13, release may be revoked if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2).

Based on the information before the Court, there is nothing to suggest that the purpose of Ms. Lorenzo's release has been accomplished or that release would no longer be appropriate under § 241.4. There is also nothing to suggest that Ms. Lorenzo violated the terms of her release. And, although Respondents contend that they are exploring removal of Petitioner to a country other than Mexico, there is nothing to suggest that, when ICE agents arrested Petitioner, the government had determined that there was a significant likelihood that Petitioner would be removed in the reasonably foreseeable future. Indeed, Respondents do not identify any such "third country," or suggest a timeframe for Ms. Lorenzo's "potential removal." (*See* Mitchell Decl. ¶ 18, ECF No. 4-1, PageID.77.) There is in fact no evidence before the Court that Respondents made any attempt to comply with the regulations governing revocation of the decision to release Petitioner.

Further, the regulations governing release provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i). "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.13(i). Courts examining the requirements for revocation of release following a final order of removal have consistently held that the procedural requirements of notice and an interview are required for revocation of a noncitizen's release. *Constantinovici v. Bondi*, No. 3:25-cv-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) (collecting cases; citations omitted). This Court agrees.

Here, Petitioner represents that Ms. Lorenzo was not provided with notice of revocation or the reason(s) for the revocation and was not given an opportunity to respond. Respondents do not

contend otherwise. Therefore, "even if the government has the discretion to revoke [Petitioner's] supervision, [her] constitutionally protected liberty interests are implicated by [her] re-detention." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citation omitted). The Court finds that Petitioner is entitled to Fifth Amendment due process protections for the reasons set forth in the Court's constitutional analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *6–8 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *7–8 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *7–9 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *6–8 (W.D. Mich. Dec. 12, 2025)

8 C.F.R. § 241.4 and § 241.13, described in detail above, were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). "The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("At one level, today's dispute may seem semantic, focused on a single word, a small one at that. But words are how the law constrains power.")). In its most elemental formulation, "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Petitioner was not provided with that opportunity.

The Court, therefore, agrees with courts around the country in concluding that the failure to provide Petitioner with notice of revocation and an informal interview promptly after her detention with a meaningful opportunity to contest the reasons for revocation in accordance with 8 C.F.R. § 241.4 and § 241.13 violates Petitioner's right to due process under the Fifth Amendment and requires release. *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10–12 (D. Or. Aug. 21, 2025); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025); *Villanueva*, 801 F. Supp. 3d at 704; *Grigorian*, 2025 WL 2604573, at *9; *Ghafouri v. Noem*, No. 3:25-CV-02675-RBM-BLM, 2025 WL 3085726, at *6 (S.D. Cal. Nov. 4, 2025); *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025).

## VII.    Other Claims and Other Forms of Relief

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VIII.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. The Court will dismiss the United States Department of Homeland Security as a Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec.

12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

<u>**Conclusion**</u>

For the reasons discussed above, the Court will enter a Judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from custody, subject to any conditions that existed under Petitioner's order of supervision. Additionally, the Court will enjoin Respondents from re-detaining Petitioner absent a material change in circumstances unless the requirements of due process have been satisfied. The Court will also order Respondents to file a status report within three days of the issuance of the Court's Opinion and Judgment to certify compliance with this opinion and the corresponding Judgment. Further, the Court will dismiss the United States Department of Homeland Security as a Respondent.

Dated:    February 10, 2026                     /s/ Jane M. Beckering
                                                                 Jane M. Beckering
                                                                 United States District Judge